R. LOGGINS v. BUCK'S ADMINISTRATORS.

1. In a suit by the holders of notes payable to bearer, the defendant answered with a denial that the notes belonged to the plaintiffs or that they had the right to sue upon them. *Held*, that this denial put the plaintiffs upon proof, and entitled them to the opening and conclusion of the argument to the jury.

2. To a suit on notes the defendant pleaded that they were given in 1860 for the rent of land and the hire of slaves for the year 1863, and that by reason of the war the property was rendered unproductive and valueless for the latter year, whereby the consideration for the notes had failed. *Held*, that exception to the answer for insufficiency was properly sustained.

3. Suit on two notes, on each of which a credit or partial payment was noted. Plaintiffs admitted the credits in their pleadings, and asked judgment for the "balance." Defendant claimed other deductions by way of offset, and introduced some evidence to sustain them. The jury found for the plaintiffs the "balance due on the notes," with the stipulated interest, but did not return any definitive amount; but the court rendered judgment for the amount of the notes and interest, less the credits noted on them, ignoring the offsets claimed by the defendant. It is assigned for error that the verdict was too vague and indefinite to support the judgment. *Held*, that the verdict was certain to a common intent, and was rendered certain to a certain intent by the pleadings; and that the judgment was in accordance with the obvious import of the verdict.

ERROR from Austin. Tried below before the Hon. I. B. McFarland.

XXXIII—8

The defendants in error, administrators of E. S. Buck, deceased, were the plaintiffs below. They sued Loggins on two notes, both dated November 24, 1860, and payable to Mary E. Howeth, or bearer—one for $800, with a credit indorsed of $250, and the other for $850, with a credit of $128 indorsed. Both notes were payable on the first of January, 1864.

It appeared, both by the pleadings and evidence, that at the date of these notes the defendant leased and hired of Mrs. Howeth her plantation and negro hands for the years 1861, 1862 and 1863. The notes sued on were given for the rent and hires for the year 1863, other notes having been given and paid off for the previous years.

The defendant denied that the plaintiffs or Buck, their intestate, ever owned the notes or had the right to sue on them, and alleged that they were still the property of Mrs. Howeth, who had transferred them to Buck, who was her brother, for the purpose of evading offsets and other defenses available against her.

Defendant also pleaded that by reason of the war and its effects, the plantation and hands were rendered valueless for the year 1863, and the consideration of the notes had therefore failed. To this answer the plaintiffs excepted, the court sustained their exception, and the defendant filed his bill of exceptions to the ruling.

Defendant also answered that as part of the contract between him and Mrs. Howeth, it was agreed that if war should ensue between the States of the Union, and the defendant be thereby interrupted in his use of the plantation or control of the hands, then he should be released from his contract and the notes should be returned; and he alleged that a written instrument to this effect was executed by him before and at the time he gave the notes, which instrument he left with Mrs. Howeth, to be executed and delivered to him, she being blind and not then ready to execute it; but that it had passed into the hands of the plaintiffs. The defendant introduced depositions of Jesse Jones and F. R. Cook,

to prove this agreement; but they testified that the agreement was not that Loggins should be released in case the war should ensue, but that if Texas should be invaded and his farming operations be disturbed thereby, then a fair deduction should be made from his notes. Cook further stated that the written instrument was left with Mrs. Howeth, but that she did not agree to sign it unless her brother, Mr. Buck, should so advise.

Defendant also claimed, as offsets or deductions, the value of the hires of one of the negroes who had died in 1861, and of another one whom, at Mrs. Howeth's request, he had allowed her son to take with him in the Confederate army as a servant, in the fall of 1862, whereby he, defendant, had lost a year's service of the negro. A brother of the defendant testified to the loss of service thus alleged.

On the eve of the trial the defendant amended and admitted "the execution of the notes in the plaintiff's petition mentioned," thus withdrawing an answer of general denial; and on this ground, and his own affirmative pleas, it was claimed that he was entitled to open and conclude the case to the jury. But the court held otherwise, and he excepted.

The verdict was as follows: "We, the jury, find for plaintiff balance due on notes, with ten per cent. int. from maturity," and judgment was thereupon rendered for the amount of the notes and interest, deducting the credits noted on them.

The defendant took no objection to the verdict when it was returned; and though he moved for a new trial on various grounds, yet the motion did not impugn the verdict for uncertainty. The assignment of errors, however, presents the question.

*B. T. & C. A. Harris*, for the plaintiff in error.—Most liberally construed, the verdict of the jury in this case is manifestly too uncertain and indefinite to support the judgment rendered thereon.

The verdict reads: "We, the jury, find for the plaintiff 'the balance due on notes,' with ten per cent. int. from maturity." The balance due on the notes sued on was the material issue to be determined by the jury. There was, of course, no controversy between the parties as to the payments endorsed on the notes and admitted by defendants in error in their pleadings, to the amount of $378; but plaintiff in error pleaded and proved offsets to the amount of $275 besides the payments admitted, and the jury simply find for the plaintiff "the balance due on notes," without stating what notes; without indicating what reductions shall be made, or without specifying the amount of the "balance due" to draw interest. How, then, is the balance due (bearing ten per cent. interest from maturity) to be ascertained? If by reference to the pleadings and the evidence—it cannot be otherwise done—we respectfully insist that it was the peculiar duty and province of the jury to determine and specify the sum they found the balance due to be, or in some manner to indicate what credits and offsets they meant should go in reduction of the notes sued on. (Darden y. Mathews, 22 Tex. R., 325.) Then their verdict would be sufficiently certain to be rendered certain, without looking beyond the record to the evidence given upon the trial. (Smith v. Tucker, 25 Tex. R., 603.) The jury having failed in some way to determine the amount of the balance established to be due on the notes, the court was not authorized to ascertain the balance, because it could not be done except by reference to the evidence. The judgment in the case (as appears by the amount thereof) must necessarily be predicated upon the assumption that the jury intended to allow only the admitted payments.

Did the plaintiff in error establish his right to a reduction of the amount claimed by reason of his loss of the services of Betsy, who died before the expiration of the term of hiring, and for the loss of the services of the man Jim, who was, at the request of the payee of the notes, (Mrs. Mary Howeth,) returned, to attend and

serve her son, William, in the army? The jury alone could answer this question. Their verdict is no response to the issue. The fact of the loss of these services (and their value) is, we contend, proved by the testimony of Thomas Loggins; and that the notes, in the hands of defendant's intestate, were subject to the reduction claimed is abundantly shown by the intimate relations existing between the payee and said intestate. They were brother and sister, and he was the legal representative of her deceased husband.

The court erred in denying the right claimed by plaintiff in error to open and conclude the argument of the case to the jury. He had withdrawn his general denial, and admitted the execution of the notes sued on. This, with the allegations of his plea, placed him on the affirmative side of the issue, and imposed upon him the burden of proof, which clearly entitled him to open and close the argument.   (3 Bour. Inst., page 332, Art. 1.)

A. Chesley, for the defendant in error.—The motion for a new trial was properly overruled.   There was a conflict of testimony, and the whole controversy was submitted to the jury under proper instruction from the court.

The verdict is sufficient.   It is a settled doctrine of this court, that if the verdict is sufficiently certain to be rendered certain by the pleadings, it is good.  Verdicts are liberally construed, and the true test is, can the court understand it?    (1 T., 98; 2 Id., 205; 7 Id., 584; 8 Id., 424; Dallam, 376; 8 T., 424.)    The notes are set out in hæc verba in plaintiff's pleadings, also the credits on each with dates and amounts.

The notes are filed, and it is conceived, become a part of the record.   They correspond with the allegations of the petition; they call for ten per cent. interest from maturity; they show a "balance due," for which balance, with interest, the jury gave a verdict, and the language of the verdict is substantially the lan-

guage of the court at the close of the last charge given to the jury, and was doubtless found with reference to it. The verdict in the case at bar is as clear and explicit, and very similar to that in Moke v. Fellman, 17 Texas, 368, which was held sufficient.

The "balance due" when applied to promissory notes has a legal significance. It is the amount of the principal and interest, less the payments, as shown by the credits on the notes. An indebtedness by the payee to the payor of a note is no payment of the note, and has nothing to do with the "balance due" on the note. It is, at most, but a setoff to the "balance due." The burden of defendant's allegations is sometimes partial failure of consideration, and sometimes total, and unliquidated offsets against a former holder of the note, which, if true, require the intervention of a jury to ascertain the amount, and it is conceived, have no reference whatever in the legal acceptance of the term to the "balance due on the notes."

There is no question raised by defendant's pleadings as to how much was the "balance due on the notes," but that there were unliquidated and unsettled equities against Mrs. Howeth, (not plaintiffs or their intestate Buck,) the amount of which defendant claimed he ought to have ascertained by a jury, and applied in offset to that "balance."

The finding of the jury is in the nature of a general verdict for plaintiffs, finding for them what they claimed in their petition, viz. : the "balance due on the notes," and is supported by the evidence at the trial in the court below, and it is respectfully submitted that it ought not to be disturbed.

LINDSAY, J.—The errors assigned in this case are, 1. That the court erred in sustaining exceptions to the plea of failure of consideration of the notes sued on. 2. In denying the right of defendant, upon the pleadings, to open and conclude the argument to the jury. And 4. That the verdict is too vague and indefinite to

support the judgment.   The third assignment, for overruling the motion for a new trial, is dependent upon the others, and need not be specially noticed.

In regard to the order of argument, it is sufficient to say that the denial of the right of the holders of the notes to sue upon them, put them upon proof, and that necessity entitled them to the opening and conclusion of the argument before the jury.

The plea of a failure of consideration, because of the intervention of the war, is warranted neither by the maxims of logic nor the rules of law, and the exception to it was properly sustained by the court.

It is manifest, from the evidence introduced to show that an instrument of writing was executed at the time of the making of the notes, which was to operate as a defeasance in a certain contingency, the jury regarded it not in their finding ; because the proof did not sustain the allegation in the answer.   It was properly so considered by them, for the proof did not sustain it.   Then, the only point really to be determined by them was, whether the holders of the notes were the real owners.   If they were, upon the pleadings and the proof, the actual amount, which they were entitled to recover, was the face of the notes, with the ten per cent. interest, abated by the credits upon the notes, which credits were admitted by the pleadings of the plaintiffs.   This is the obvious import of the verdict of the jury.   The finding of the jury is certain to a common intent, and is made certain to a certain intent by the pleadings in the cause.   And after the verdict of twelve men, judgment shall not be staid or reversed, for want of form.   The judgment is affirmed.

Affirmed.